claim against the defendants, who by possibility may not be able to respond to his decree when obtained, he will acquire security for his demand by the money itself deposited in court.

I am therefore clear in the opinion that the prayer of the petitioners should be granted.

## Case No. 3,215a.

### COPPENBUSEN v. FOLKE et al.

[Betts' Scr. Bk. 681.]

Circuit Court, S. D. New York. Feb. 24, 1862.

PATENTS FOR INVENTIONS—"TIN FOIL"—OIL PATENTS—VALIDITY.

[In equity. Bill by Conrad Coppenbusen to restrain the infringement of certain patents by the defendants, Oscar Folke, Eberhard Faber, Edward Simon, and others.]

Charles M. Keller, E. W. Stoughton, and George D. Sargeant, for complainant.

John Ashmead and W. J. A. Fuller, for defendants.

Before NELSON, Circuit Justice, and SHIPMAN, District Judge.

PER CURIAM. Both patents of L. Otto P. Meyer, known as the "tin foil" and the "oil" patents, for improved methods of vulcanizing hard rubber compound, embossed and plain surfaces, are valid; the re-issued patent covers no more than the original invention. It is also adjudged that the respondents have infringed both patents; that an injunction be issued, and an order of reference to account.

COPPER SILL (UNITED STATES v.). See Case No. 14,866.

## Case No. 3,216.

### COPPERTHWAIT et al. v. McCORD.

[2 McLean, 143.][1]

Circuit Court, D. Ohio. July Term, 1840.

PRACTICE—CONTINUANCE.

[The Ohio statute allowing service of a notice by defendant, requiring service of copies of all writings upon which the declaration is founded, comprehends actions on contract only, and not an action of ejectment; consequently the failure to respond to a notice given in such an action is no ground for a continuance.]

The defendant [Samuel McCord] served a notice on the plaintiff's attorney, to furnish him with copies of all deeds, records of judgments, and decrees in equity, and all other evidence of title intended to be used as evidence on the part of the lessor of the plaintiff. The statute, under which this notice

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

was served, requires "the plaintiff, or his attorney, to deliver to the defendant, or his attorney, if demanded, a copy of the account, or bill of particulars, of the demand, or a copy of the bill, bond, deed, bargain, contract, note, instrument, or other writing, whereon the declaration is founded, or which he intends to offer in evidence at the trial." And, in the succeeding section, it is provided, that if the plaintiff, or defendant, shall refuse to furnish the copy or copies required, the party so refusing shall not be permitted to give in evidence at the trial, the original, of which a copy has been refused. Under this act it seems it has not been the practice, in the state courts, to give the notice in the action of ejectment. But whether the act embraces the action of ejectment, has not been decided by the supreme or circuit courts of the state. The uniform course of practice, under an act, goes strongly to establish the construction of it, without any express decision of the court. As the papers required by the notice in this case have not been produced, a continuance is asked on that ground; and this, for the first time, it is believed, brings up for decision, whether the statute embraces an action of ejectment. The language of the statute is general, and no action is excepted, but the provision would seem to apply to actions founded upon contracts, and this construction has generally, if not uniformly, been given to the act. And, we think, the intention of the legislature is effectuated by this view of the statute. The notice, under the statute, applies as well to the defendant as to the plaintiff; and can it be supposed, that the lessor of the plaintiff, in the action of ejectment, by serving a notice on the defendant, can compel him to exhibit his title papers before the plaintiff has proved his title?

Upon the whole, we think the refusal or neglect to furnish the copies called for by the notice affords no ground for a continuance of the cause, as the statute does not authorize such a notice in an action of ejectment.

Mr. Chase, for plaintiff.

Moses B. Corwin, for defendant.

COQUILLARD (DENNISTON v.). See Case No. 3,801.

CORA, The (BOND v.). See Cases Nos. 1,620 and 1,621.

## Case No. 3,217.

### The CORA NELLIE.

[2 Adm. Rec. 332.]

Superior Court, S. D. Florida. June 30, 1840.

SALVAGE COMPENSATION.

[On cargo saved, of the value of $29,153, 47 per cent. was awarded as salvage.]

[Cited in Baker v. Cargo, etc., 35 Fed. 542; The Maryland, Case No. 9,218.]

[In admiralty. Libel for salvage (William Clare, claimant).]

Adam Gordon, for libelants.

S. R. Mallory, for respondent.

[Before MARVIN, Judge.]

[NOTE. Nowhere reported; no opinion can be found in the records of the court.]

## Case No. 3,218.

### CORBET et al. v. JOHNSON et al.

[1 Brock. 77.][1]

Circuit Court, D. Virginia. May Term, 1805.

#### COLLECTION OF DEBT OF DECEDENT.

At law, a bond creditor has his election to proceed either against the heir or executor, but if he comes into equity, and proceeds against the heir or devisee, he must join the executor in the suit, and he must exhaust the personal estate of the debtor in the hands of his legal personal representative, before the lands will be subjected. But if the personal fund has passed into other hands than those of such legal personal representative, he is not bound to pursue it further, and the court will proceed to decree directly against the land. Therefore, when a bond debtor died, having appointed two executors, both of whom qualified, and one of them died, having a portion of his testator's estate in his hands, and his co-executor afterwards died, whose executor became the executor of the first testator, and a bill in equity was filed by the bond creditors, against the heirs and devisees, and the executor of the surviving executor of the debtor, the court refused to compel the plaintiffs to join the representative of the executor who first died, in the suit (although that executor was responsible for a portion of the personal estate of the bond debtor), and decreed a sale of the land derived from him; it appearing, that the personal assets in the hands of the legal personal representative were exhausted.

[Explained and followed in Murdock v. Hunter, Case No. 9,941. Cited in McLaughlin v. Bank of Potomac, 7 How. (48 U. S.) 231; Hefner v. Northwestern Mut. Life Ins. Co., 123 U. S. 747, 8 Sup. Ct. 341.]

The bill in this case was filed by Cunningham Corbet and others, assignees of Ninian Minzies, against the heirs and devisees of Edward Johnson, deceased, and also against William Wiseham, executor of Andrew Ronald, who was the surviving executor of Edward Johnson, to compel the payment of two bonds, executed by the said Johnson, in his life time, to Minzies, which bonds were assigned by Minzies to the plaintiffs, for the benefit of his creditors. Edward Johnson, by his will, appointed William Ronald and Andrew Ronald his executors. Both of the executors appointed by the will of Edward Johnson qualified and acted as such. The report of the commissioner appointed to settle the administration account of Andrew and William Ronald, showed a balance due by William Ronald to the estate of his testator of £3179 1s. 4d., and that the estate of Edward Johnson owed the estate of Andrew Ronald £64 15s. 10d. William Ronald died intestate, before his co-executor, and afterwards Andrew Ronald also died, having appointed the defendant Wiseham his executor, who, as such, was the executor of Edward Johnson. Both William and Andrew Ronald were dead before the institution of this suit, and the representatives of William Ronald were not made parties thereto. The heirs and devisees of Edward Johnson, who were also his children, in their joint answer, referred to the copy of the bond of the co-executors of Edward Johnson, and to the report of a commissioner on their administration account, showing that a balance more than sufficient for the discharge of the plaintiff's debt was due from them to Edward Johnson's estate, and insisted that the plaintiff's debt, which was of the first dignity, should be satisfied out of the personal estate of their ancestor, and to this end that the personal representatives of William Ronald, and the sureties in the executorial bond, should be made parties defendants, and be subjected to the payment of this debt, claiming exemption for the real estate derived from Edward Johnson, until recourse was had to his personal estate into whatever hands it had passed. On the question raised in the answer, as to the proper parties to this bill, the following opinion of the court was delivered by

Before MARSHALL, Circuit Justice, and GRIFFIN, District Judge.

MARSHALL, Circuit Justice. The material question in this case is, how far a bond creditor, coming into a court of equity to subject lands to his debt, will be compelled to pursue the personal estate, before the lands shall be applied to the satisfaction of his claim. At law, he has his option to resort to either fund. Originally, it appears to have been deemed necessary first to exhaust the personal estate; but from the time of Edward IV., it has been held, that the creditor may elect to sue either the heir or the executor. The cases on this subject are reviewed by Powell;[2] and since that period, it has been uniformly decided, that "assets in the hands of the executor at the time the writ was sued out" is no plea in bar to an action of debt against the heir. But although the creditor has this election, if he chooses to proceed at law, yet if he comes into a court of equity, he must conform to its rules. One of these is, that the executor shall be joined in the suit. For this rule, two reasons are assigned:—1st. That he may contest the claim. 2dly. That the personal fund out of which a reimbursement would be decreed to the heir, may be applied in the first instance to the payment of the debt. That the legal, personal representative of the first testator must, therefore, be joined in a suit brought on the chancery side in this court by a creditor against the heirs, seems to be universally conceded. So far as the ques-

---

[1] [Reported by John W. Brockenbrough, Esq.]

[2] 2 Pow. Mortg. 777, 778, and Mr. Coventry's note E.